238    NEW-YORK PRACTICE REPORTS.

Millered agt. The Lake Ontario, Auburn, and N. Y. R. R. Co.

## SUPREME COURT.

MILLERED agt. THE LAKE ONTARIO, AUBURN, AND NEW-YORK
RAILROAD CO.

Under section 12 of the general Railroad Act of 1850, (*Laws of* 1850, *ch.* 140,)
a railroad company organized under that act is liable to a laborer upon its
road for labor performed in constructing such road, only where such labor
has been performed under a contract made with, and is chargeable *to*, some
person who has contracted *directly with such company* for the construction
of some portion of its road.

That section of the act does *not* embrace a laborer under a *sub-contrator*.
(*This seems to be adverse to the case of Warner* agt. *the Hudson River R. R
Co.*, 5 *How. Pr. R.* 454.)

The statute is in derogation of the common law, and should be construed strictly,
and not be extended by construction beyond the absolute requirements of the
language used.

*Seventh District Monroe General Term, March,* 1854. Be-
fore SELDEN, JOHNSON, and WELLES, Justices.

*Appeal from the Cayuga County Court.* The defendants
were a corporation organized under the general Railroad Act
of 1850. (*Laws of* 1850, *chap.* 140.) In May, 1853, Hack-
ley & Hungerford, contractors with the defendants for the con-
struction of their railroad, were engaged in constructing the
road, and entered into a sub-contract with one Deland to con-
struct a portion of it. Deland hired the plaintiff as a foreman.
The plaintiff worked upon the road forty-seven days, under De-
land, for which Deland did not pay him. The plaintiff then
served a notice upon the defendants, under § 12 of said act, in
which notice he described himself as foreman, and claimed $64
from the defendants. They refused to pay him, and he sued
them in a justices' court. On the trial he proved that he was
hired by Deland as a foreman, and that his duty was that of a
foreman, and that his wages were higher than those of laborers.
The defendants moved for a non-suit on two grounds: 1st. That
Deland was not a *contractor* with them within the meaning of
the general railroad act; 2d. That the plaintiff was not a la-
borer within the meaning of that act. The justice denied the

motion for a non-suit, and rendered judgment for the plaintiff, which the county court affirmed, on appeal. The defendants then appealed to the supreme court.

CLARENCE A. SEWARD, *for Appellants.*

JAMES R. COX, *for Respondents.*

By the Court—SELDEN, Justice. The main question presented by the record in this case is, whether Deland, the immediate employer of the plaintiff, was a *contractor* within the meaning of § 12 of the general Railroad Act of 1850, which is as follows: " As often as any contractor for the construction of any part of a railroad, which is in progress of construction, shall be indebted to any laborer, for thirty or any less number of days, for labor performed in constructing said road, such laborer may give notice of such indebtedness to said company in the manner herein provided; and said company shall thereupon become liable to pay such laborer the amount so due him for such labor, and an action may be maintained against said company therefor. Such notice shall be given by said laborer, to said company, within twenty days after the performance of the number of days' labor for which the claim is made. Such notice shall be in writing, and shall state the amount and number of days' labor, and the time when the same was performed, for which the claim is made, and the name of the contractor from whom due, and shall be signed by such laborer, or his attorney; and shall be served on an engineer, agent, or superintendent employed by said company, having charge of the section of the road on which such labor was performed, personally, or by leaving the same at the office or usual place of business of such engineer, agent, or superintendent, with some person of suitable age. But no action shall be maintained against any company under the provisions of this section, unless the same is commenced within thirty days after notice is given to the company by such laborer as above provided."

A moment's reflection will satisfy any one, that whether we put upon the section the limited construction contended for by the defendants, or the enlarged and liberal interpretation claimed

Millered agt. The Lake Ontario, Auburn, and N. Y. R. R. Co.

by the plaintiff, serious difficulties can be foreseen in its practical operation.   If the term *contractor* is construed to embrace those only who contract directly with the corporation, then it is obvious that the effect of the provision might be entirely evaded on the part of a railroad company by entering into a contract with a single individual for the whole work, and allowing him to sublet it by sections.   To accomplish this, however, it would be necessary that the contract should be real and not merely colorable.   On the other hand, if the term is not limited to those who contract immediately with the company, it can have no limit short of including every sub-contractor, however remote.   Under this construction, it would be indispensable to the security of the company, that it should have the state of the accounts of every sub-contractor on the line of the road. This would require of the company a watchfulness of remote details which would be not only onerous, but impracticable.

Difficulties of this sort will be found invariably to attend every departure from those plain and simple rules by which the obligation of contracts is determined.   Every such deviation introduces into the law of contracts a foreign element which cannot, without difficulty, be made to harmonize with those principles of reason and natural justice upon which the system is based.   That salutary rule, therefore, which requires all statutes in derogation of the common law to be construed strictly, applies with peculiar force to such a case.   Such statutes are not to be extended by construction, and, if the terms in which they are couched will admit of two interpretations, that which will conform most nearly to the settled rules of the common law is in all cases to be adopted.   A compliance with this rule would require us to construe the section in question so as to confine its operation to cases where the person contracting directly with the company has failed to pay his laborers, as this construction would interfere least with those established principles by which the rights and obligations of contracting parties are uniformly governed.   It will be found, upon examination, that courts have always inclined against giving to statutes analogous to this such a construction as would extend their

operation beyond the absolute requirements of the language used. (Wood agt. Donaldson, 22 *Wend.* 395; Steinmetz agt. Poudinot, 3 *Serg. and Rawle,* 541; Truscott agt. Hall, 8 *Alabama,* 522.)

But there are other reasons leading to the same conclusion. The term *contractor,* as used in this statute, is unaccompanied by any words expressly limiting or defining its meaning. It is not to be supposed that the legislature designed to compel railroad companies to pay twice over for the same work or to impose upon them liabilities which they could not, by the exercise of proper vigilance and caution, guard against. If their responsibilities are limited to seeing that the obligations of their immediate contractors for work done upon their road are faithfully discharged, it is within their power to protect themselves by contracting only with men of character and responsibility, by requiring indemnity from those with whom they contract, or by withholding payment until their liability has ceased by lapse of time. But no precautions, however strict, could effectually guard against the responsibilities which would be thrown upon these companies if every grade of sub-contractor is held to be embraced within the provisions in question.

That the legislature intended that the railroad company should have the means of self-protection is indicated by the clause which requires the notice served upon the company to contain the name of the contractor from whom the debt is due. This clause must have had an object. It would seem that this object must have been to enable the company to withhold the amount due out of any sum which might be due to such contractor. But, in the case of a sub-contractor, this provision would be entirely nugatory. The company would have no control over his accounts, and no power to protect itself by retaining the money.

This, however, is not the only nor the most serious difficulty. Suppose that a railroad company, on receiving notice from the laborer under a sub-contractor, should pay the demand, what means has it of reimbursing itself? Could it retain the amount out of any sum which might be due to the original contract-

or? Clearly not. Such contractor may have performed his entire contract with the company, and the statute contains not a syllable which would tend to release the company from any portion of its obligations to him, neither does it contain anything which would, even by implication, subrogate the company to the rights of the laborer as against the sub-contractor. If the company should be compelled to pay such a demand, it must inevitably, therefore, lose the amount paid. This consequence might not follow, if the liability of the company under the provision in question is limited to dues from the first contractor. Any sums which the company should be legally compelled to pay in consequence of the default of an original contractor, would probably diminish, *pro tanto*, its liability to such contractor; although, as the statute is silent on the subject, there would be some difficulty in giving to the company protection even to this extent, consistently with any established principles, unless its agreement with the contractor should contain a clause of indemnity.

If the legislature had intended to compel railroad companies to insure the responsibility and integrity, not only of every person to whom it should directly let any portion of its road, but also of every one who, without its privity or knowledge, should succeed in obtaining a job as a sub-contractor upon such road, it would, I think, at least, have provided some means by which the defaulting contractor could be made to refund to the company, provided the latter should be proceeded against under the statute.

For these reasons, among others, I am of opinion that railroad companies can only be made liable under the section of the statute in question, where the labor performed is chargeable to some person who has contracted directly with such company for the construction of some portion of its road.

This conclusion renders it unnecessary to notice the other points made upon the argument.

Judgment of county court and of justice reversed.